# jackson lewis.

Representing Management Exclusively in Workplace Law and Related Litigation

Jackson Lewis P.C.
58 South Service Road
Suite 250
Melville, New York 11747
Tel 631 247-0404
Fax 631 247-0417
www.jacksonlewis.com

| | | | |
|---|---|---|---|
| ALBANY, NY | DETROIT, MI | MILWAUKEE, WI | RALEIGH, NC |
| ALBUQUERQUE, NM | GRAND RAPIDS, MI | MINNEAPOLIS, MN | RAPID CITY, SD |
| ATLANTA, GA | GREENVILLE, SC | MONMOUTH COUNTY, NJ | RICHMOND, VA |
| AUSTIN, TX | HARTFORD, CT | NEW ORLEANS, LA | SACRAMENTO, CA |
| BALTIMORE, MD | HONOLULU, HI* | NEW YORK, NY | SALT LAKE CITY, UT |
| BERKELEY HEIGHTS, NJ | HOUSTON, TX | NORFOLK, VA | SAN DIEGO, CA |
| BIRMINGHAM, AL | INDIANAPOLIS, IN | OMAHA, NE | SAN FRANCISCO, CA |
| BOSTON, MA | JACKSONVILLE, FL | ORANGE COUNTY, CA | SAN JUAN, PR |
| CHARLOTTE, NC | KANSAS CITY REGION | ORLANDO, FL | SEATTLE, WA |
| CHICAGO, IL | LAS VEGAS, NV | PHILADELPHIA, PA | SILICON VALLEY, CA |
| CINCINNATI, OH | LONG ISLAND, NY | PHOENIX, AZ | ST. LOUIS, MO |
| CLEVELAND, OH | LOS ANGELES, CA | PITTSBURGH, PA | TAMPA, FL |
| DALLAS, TX | MADISON, WI | PORTLAND, OR | WASHINGTON, DC REGION |
| DAYTON, OH | MEMPHIS, TN | PORTSMOUTH, NH | WHITE PLAINS, NY |
| DENVER, CO | MIAMI, FL | PROVIDENCE, RI | |

*through an affiliation with Jackson Lewis P.C., a Law Corporation

MY DIRECT DIAL IS: (212) 545-4005
MY EMAIL ADDRESS IS: BRENDAN.SWEENEY@JACKSONLEWIS.COM

July 8, 2020

**VIA ECF**
Hon. Sandra J. Feuerstein
United States District Judge
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

          Re:    Watterson v. RUI Management Services, Inc. and Evan Reiter
                 Civ. Action No.: 2:20-cv-01783 (SJF) (AYS)

Dear Judge Feuerstein:

      We represent Defendants in the above-referenced matter. An initial conference is scheduled for July 23. The instant application regarding proper case handling in this Fair Labor Standards Act ("FLSA") matter is based on Section 5(B) of the Court's Individual Rules. Defendants' intention is to "obviate[e] the need for expensive, time-consuming and burdensome discovery practice."

**Background**

      The sole named Plaintiff in this case, Eric Watterson ("Watterson"), was employed by Defendant RUI Management Services, Inc. ("RUI") as a Customer Service Representative ("CSR") from April 2018 to October 2018. Watterson's Complaint alleges that he, and similarly situated individuals, were not paid for all hours worked and were not properly paid for overtime in violation of the FLSA and the New York Labor Law ("NYLL").

      It is undisputed that "Plaintiff's job duties primarily included calling and receiving calls from debtors." (Compl. ¶ 45). The Complaint claims:

- Plaintiff and others "were required to arrive and clock in at least 7 minutes in advance of their 'official' shifts" (Compl. ¶ 53);

- Defendants required Plaintiff and others "to start their shifts early so that they could begin making and receiving phone calls immediately at the start of their 'official' scheduled shift." (Compl. ¶ 55).

# jackson|lewis.

- "Since Defendants rounded their employees' hours to the nearest 15-minute increment Plaintiff [and others] were all deprived of time actually worked, because they would only get credit for working to the nearest quarter of an hour." (Compl. ¶ 58).

The time for which Plaintiff claims he, and others, were not compensated is not time for which RUI was required to compensate its employees. An employer has no obligation to compensate employees for "activities which are preliminary to or postliminary to [the employee's] principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities." 29 U.S.C. § 254(a)(2). To be "integral and indispensable," an activity must be "necessary to the completeness or integrity of the whole" and constitute "an intrinsic portion or element, as distinguished from an adjunct or appendage, of that whole." *Campbell v. Empire Merchants, LLC*, No. 16-CV-5643 (ENV) (SMG), 2018 US Dist LEXIS 146510, at *16 (E.D.N.Y. Aug. 27, 2018) (*citing Integrity Staffing Solutions, Inc. v. Busk*, 135 S. Ct. 513, 516 (2014)).

The United States Supreme Court most recently considered whether certain activities constituted compensable work, or preliminary or postliminary activities, in *Integrity Staffing Solutions, Inc. v. Busk*, 135 S. Ct. 513, 516, 190 L. Ed. 2d 410 (2014). The employees in that case were warehouse workers who retrieved inventory and packaged it for shipment. The employer required the workers to undergo security screenings at the end of their shifts as a theft prevention measure. The employees argued that they were entitled to compensation for time spent waiting for and undergoing these security screenings. *Id.* at 515-16. The Supreme Court unanimously rejected the workers' argument. In doing so, the Court stressed that the screenings were not the "'principal activity or activities which [the] employee is employed to perform'. . . Integrity Staffing did not employ its workers to undergo security screenings, but to retrieve products from warehouse shelves and package those products for shipment." *Id.* at 518 (quoting 29 U.S.C. § 254(a)(1)).

Limited discovery will confirm that RUI's policies are entirely lawful and result in RUI paying CSRs for all compensable work. The attached Declarations of Michael Russell and Rebecca White confirm the relevant policies and practices. The time that a CSR logs into RUI's timekeeping system is not the time they begin to perform compensable work. CSRs must be logged into a system called InContact to make or receive calls. A CSR cannot do their job – "calling and receiving calls from debtors" (Compl. ¶ 45) without logging into InContact. (See Declaration of Rebecca White ¶ 6 (Attachment A); Declaration of Michael Russell ¶ 7 (Attachment B)). As an example, it is typical for a CSR who is scheduled for a 9:00 a.m. shift to punch in the timekeeping system at 8:55 a.m.,[1] walk to their desk, put away their personal belongings, boot up their computer, socialize with coworkers and begin taking calls between 8:59 and 9:01 a.m. That individual would be paid from 9:00 a.m. Records from InContact show *precisely* when CSRs began to perform compensable work.

---

[1] The Complaint misstates RUI's rule. Plaintiff and other employees were not "required" to arrive at work seven minutes before their official start time. Rather, Defendant RUI prohibited employees from clocking in more than seven minutes before their scheduled start time. *See* Russell Dec., Att. A.

**jackson|lewis.**

The Complaint claims Defendants intentionally did not pay Watterson and others for 7 minutes of compensable time every shift. (Comp. ¶ 61). RUI's records show this is patently false. A comparison of the time that Watterson logged into InContact, against the time from which he was paid at the start of his shifts, shows that Watterson was paid for virtually all of the time that he was active on the InContact system. The total time that Watterson was logged into InContact (not including meal periods) during his seven months of employment is 1,271.68 hours. Watterson was paid for 1,269.00 hours. (Russell Decl. ¶ 13). At Watterson's hourly rate, this amounts to a total underpayment of $42.78. (*Id.*). A review of the records of five other randomly selected CSRs shows that RUI consistently paid CSR's for more time than they were logged into InContact. (*Id.* ¶ 14).

There is no dispute that "Plaintiff's job duties primarily included calling and receiving calls from debtors" (Compl. ¶ 45) and they were paid for all time during which they performed these duties. The only issue to decide in this case is whether Watterson and other CSR's performed compensable work in the brief time between punching in to RUI's timekeeping system and logging into InContact. If Plaintiff cannot establish that he was required to perform compensable work for which he was not paid then he cannot represent others in a collective or class action.

**Defendants' Proposed Scheduling Order**

Defendants propose that the parties first conduct limited discovery regarding Defendants' policies and the nature of the activities that Watterson performed without being compensated. The Court should then set a briefing schedule for Defendants' motion for summary judgment, followed by a subsequent briefing schedule for Plaintiff's motion for conditional certification, if necessary. The proposed order (Attachment C) provides for tolling of any applicable statute of limitations during the limited discovery period and consideration of a motion for summary judgment.

Setting a limited period for initial discovery focused on the merits of Watterson's claims and allowing for a motion for summary judgment, before addressing conditional certification or class certification, is the most efficient way to manage this case. Given the evidence discussed above, the Court should postpone Plaintiff's anticipated motion for conditional certification during the pendency of Defendants' anticipated motion for summary judgment. *See, e.g., Cucinotta v. Personal Touch Home Care of N.Y., Inc.*, No. 2:19-cv-00057 (SJF) (AYS), Dkt. No. 56 (E.D.N.Y. Nov. 14, 2019) (ordering a bifurcated discovery schedule for individual discovery and class discovery and staying motions for conditional and class certification); *Kuznetsov v. XpresSpa-Jdee JV, LLC*, No. 10-cv-3473 (KAM) (JMA), Dkt. No. 23 (E.D.N.Y. Mar. 25, 2011) (ordering a bifurcated discovery schedule for individual discovery and class discovery, as this approach "best strikes a balance between judicial and resource economy, and prevention of prejudice to prospective class members"); *Lola v. Skadden, Arps, Meagher, Slate & Flom, LLP et al.*, No. 13-cv-5008, Dkt. No. 48 (S.D.N.Y. Sept 11, 2015) (allowing limited discovery on a determinative factor and an expedited summary judgment motion to proceed); *see also Ellis v. J.R.'s Country Stores, Inc.*, No. 12-cv-01916, 2012 U.S. Dist. LEXIS 175257, at **6-7 (D. Colo. Dec. 11, 2012) (granting defendant's motion to stay plaintiffs' conditional certification motion pending ruling on defendant's motion for summary judgment

# jackson|lewis.

based on the likelihood of success of motion and conservation of parties' resources); *McAninch v. Monro Muffler Brake, Inc.*, 799 F. Supp. 2d 807, 809, 820 (S.D. Ohio 2011) (granting summary judgment dismissing three named plaintiffs' FLSA claims following stay of plaintiffs' motion for conditional certification). Should Defendants prevail at the summary judgment stage on the threshold issue of whether time for which Watterson was not paid was not compensable, or was *de minimus*, such a decision will resolve Watterson's federal causes of action, obviating the need for discovery or motion practice related to conditional certification.[2]

Delaying a motion for certification pending a motion for summary judgment is appropriate where collective or class wage-hour claims would become "moot when [Plaintiff's] individual claim became moot, because she lacked any personal interest in representing others in this action." *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013); *see also Clarke v. JPMorgan Chase Bank, N.A.*, 2010 U.S. Dist. LEXIS 33264, at *69 (S.D.N.Y. Mar. 26, 2010) (granting Defendant's motion for summary judgment and denying motion for collective action certification as moot).

Defendants conferred with counsel for Plaintiff regarding this proposal. Counsel for Plaintiff did not agree to this proposal.

Respectfully submitted,

JACKSON LEWIS P.C.

Brendan Sweeney

cc: Counsel of Record (via ECF)
4819-7279-3536, v. 1

---

[2] Should Defendants succeed in obtaining dismissal of Plaintiff's FLSA claim, this Court should not retain jurisdiction over any remaining state law claims. See e.g., Krumholz v. Northport, 873 F. Supp. 2d 481, 492 (E.D.N.Y. 2012).

# ATTACHMENT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
ERIC WATTERSON, on behalf of himself
And all others similarly situated,

              Plaintiff,

- against -

RUI MANAGEMENT SERVICES, INC.
and EVAN REITER, individually

              Defendants.
------------------------------------------------------------ x

Civil Action No. 2:20-cv-01783 (SJF-AKT)

## DECLARATION OF REBECCA WHITE

Rebecca White declares, pursuant to 28 U.S.C. § 1746, the following:

1. I am employed as a Customer Service Supervisor for RUI Management Services, Inc. ("RUI").

2. I began working for RUI as a Customer Service Representative ("CSR") on March 6, 2017. I was promoted to Supervisor on January 4, 2020.

3. CSRs are employed to make and receive calls with customers on RUI's behalf.

4. CSRs are trained on RUI's computer systems and timekeeping systems.

5. CSRs clock in to RUI's timekeeping system when they arrive at RUI's call center but a CSR cannot begin performing their job when they punch into the timekeeping system.

6. A CSR cannot perform their job duties -- making and receiving calls -- without being logged into a system called InContact.

7. RUI does not require or expect CSRs to perform their jobs before the scheduled start time of their shift.

8. RUI expects CSRs to be ready to perform their job duties at their scheduled start time.

9. The process of logging into RUI's computer system and necessary computer applications is very simple.

10. RUI prohibits CSRs from punching in to its timekeeping system more than seven minutes before their scheduled start time. There is no requirement at RUI that a CSR punch in seven minutes before their shift.

11. When I was a CSR I would choose to arrive at the RUI call center between ten and fifteen minutes before my scheduled start time. I would turn on my computer and then go and get coffee. After drinking my coffee, I would punch in the timekeeping system and then I would finish booting up my computer and signing into the computer applications that I needed to be ready to perform my job. I would not begin performing my job as a CSR until approximately the scheduled start time for my shift.

12. Aside from walking from the timeclock to their workstations, CSRs typically use the time between punching in and the start of their actual work to put away personal belongings, socialize with coworkers and boot up their computers. Many times they do these things simultaneously.

13. Some of the CSRs that I supervise regularly punch into RUI's timekeeping system approximately two minutes before their scheduled start time. These individuals quickly log into the system and applications and are usually ready to begin performing their job around their scheduled shift start time.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____
Rebecca White

Executed on: 6/19/2020
                    Date

4833-0652-4608, v. 1

# ATTACHMENT B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x
ERIC WATTERSON, on behalf of himself :
And all others similarly situated, :
 :
                        Plaintiff, : Civil Action No. 2:20-cv-01783
 : (SJF-AKT)
            - against - :
 :
RUI MANAGEMENT SERVICES, INC. :
and EVAN REITER, individually :
 :
 :
                      Defendants. :
---------------------------------------------------------------- x

## DECLARATION OF MICHAEL RUSSELL

Michael Russell declares, pursuant to 28 U.S.C. § 1746, the following:

1. I am employed as Vice President, Operations, for RUI Management Services, Inc. ("RUI").

2. This Declaration is based on my personal knowledge.

3. I am responsible for oversight of the operations of RUI's call center in Melville, New York.

4. RUI compensates Customer Service Representatives ("CSR") for all time that they work.

5. CSRs are employed to make and receive calls with customers on RUI's behalf.

6. CSRs clock in to RUI's timekeeping system when they arrive at RUI's call center but a CSR cannot begin performing their job when they punch into the timekeeping system.

7. A CSR cannot perform their job duties – making and receiving calls -- without being logged into a system called InContact.

8. CSRs are not permitted to punch in to the timekeeping system more than seven minutes before their scheduled shift start time. Attached as Attachment A is a memo that was published to CSRs that states: "an agent is expected to Clock in no earlier than 7 minutes before their start time."

9. RUI does not require CSRs to perform their jobs before their scheduled start time. RUI's expectation is that CSRs will be ready to perform their job duties at their scheduled start time.

10. Based on my experience, it is typical for CSRs to punch in between 1 and 5 minutes before the start of their shift. CSRs then walk to their desk, put away their personal belongings, boot up their computer, socialize with coworkers and begin taking calls at their scheduled start time.

11. RUI maintains records of the time that a CSR is logged into InContact.

12. I have reviewed records of the times that Eric Watterson punched into RUI's timekeeping system, logged into InContact, and the time for which he was paid.

13. Watterson was paid for virtually all of the time that he was active on the InContact system. A comparison of the time that Watterson logged into InContact, against the time from which he was paid at the start of his shifts, shows that during approximately seven months of employment, Watterson was paid for all but 2.6 hours of compensable time. The total time that Watterson was logged into InContact (excluding meal periods and certain training time)[1] is 1,271.68 hours. Watterson was paid for 1,269.00 hours. 2.6 hours at Watterson's hourly rate would amount to $42.78.

---

[1] If the training time is included, Watterson was logged into InContact 1,309.04 hours (not including meal periods) and was paid for 1,320.25 hours.

14. I have also reviewed the records of five other CSRs who work in RUI's Long Island call center. Reviewing these records confirmed that CSRs are typically paid for slightly more time than they are logged into InContact.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____
Michael Russell

Executed on: 6/19/2024
Date

4844-3104-9152, v. 1

# ATTACHMENT A

# Memo

**To:** RUI Employees

**From:** RUI Management

**cc:** Human Resources

**Date:** 12/08/2017

**Re:** Clock-in Expectations Update

---

RUI is making a policy change relative to Clock-in Expectations.

In the past, agents have been expected to be ready to take calls at the start of their shift. For example, an agent starting at 9:00 am would be expected *to take their first call* at 9:00 am. This requirement expected agents to clock in *earlier* than their start time. For the mutual benefit of our agents and RUI, this expectation has changed.

Going forward, an agent is expected to <u>Clock In no earlier than 7 minutes before their start-time</u>. For example, an agent starting at 9:00 am would be expected to *clock in* between 8:53 and 9:00 am, then proceed to their work station to engage in work activities. An agent's first call should be taken as soon as their system is up. Clocking in earlier will be considered unauthorized time and would be considered a policy violation which could result in disciplinary action.

As this is a policy change (Page 3 of the welcome packet), please Print Name, Sign and Date below.

X _____     X _____
Print Name                                                                Date

X _____
Sign Name

ATTACHMENT C

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
ERIC WATTERSON, on behalf of himself  :
And all others similarly situated,    :
                                      :
                        Plaintiff,    :      Civil Action No. 2:20-cv-01783
                                      :      (SJF-AKT)
            - against -               :
                                      :
RUI MANAGEMENT SERVICES, INC.         :
and EVAN REITER, individually         :
                                      :
                                      :
                        Defendants.   :
------------------------------------------------------------ x

## [PROPOSED] CASE MANAGEMENT PLAN

1.  Initial discovery shall be limited to Plaintiff's individual claims and Defendants' defenses to Plaintiff's individual claims:

2.  The parties shall exchange initial disclosures by July 31, 2020;

3.  The parties shall serve initial requests for production of documents and interrogatories ("Initial Written Discovery") (limited to 15 interrogatories) by August 14, 2020. If a party believes that the Initial Written Discovery served on it is unreasonable or beyond the scope of the discovery contemplated by this stipulation, it shall promptly notify the other party and the parties shall meet and confer promptly to attempt to resolve the dispute. If the meet and confer is unsuccessful, the Court shall resolve the dispute.

4.  The parties shall respond to Initial Written Discovery by September 15, 2020;

5.  Depositions shall be completed by October 30, 2020;

6.  Any motion for summary judgment with respect to Plaintiff's individual claims shall be filed on or before December 4, 2020 and shall be briefed and submitted in accordance with Judge Feuerstein's Individual Rules.

7.  The statute of limitations with respect to the FLSA claims of members of the putative FLSA collective, as defined in Plaintiff's Complaint, shall be tolled as of the date of the Court's Order adopting this Stipulated Case Management Plan, and shall remain tolled until three weeks after the Court issues an order granting or denying any motion for summary judgment filed in accordance with paragraph 2. If Defendants elect not to file a Motion for Summary Judgment, the statute of

limitations shall be tolled until three weeks after counsel for Defendants notifies counsel for Plaintiff that they will not file such a Motion.

SO ORDERED on this _____ day of _____, 2020

_____
United States District Judge

4850-5101-9712, v. 1