The Law Offices of Jacob Aronauer
225 Broadway, 3rd Floor
New York, New York 10007
(212) 323-6980
jaronauer@aronauerlaw.com

July 15, 2020

**Via ECF**
Hon. Sandra J. Feuerstein
United States Courthouse
100 Federal Plaza
Central Islip, NY 11722

      Re:    Watterson v. RUI Management Service
               20-cv-01783 (SJF) (AKT)

Dear Judge Feuerstein:

This office represents Plaintiff in the above captioned matter. Please accept this letter in opposition to Defendants' motion to bifurcate discovery (dkt 17). Discovery should not be bifurcated because Plaintiff and the proposed Rule 23 Class perform the same job duties, work the same schedule and are paid the same. Simply because a factual dispute exists as to whether Defendants have complied with the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") is not a basis for bifurcated discovery.

For the reasons set forth, Defendants' motion should be denied. First, Defendants do not dispute that Plaintiff's job duties are similar to the proposed Rule 23 class[1] Second, Defendants acknowledge that Plaintiff, as well as the other proposed Rule 23 Class members, are required to clock in prior to the start of their shift to perform specific job duties in order to begin collection work. Third, Defendants further admit that Plaintiff and the proposed Rule 23 Class are not paid for this labor even though this labor is essential for them to perform their primary job duties.

Fourth, Defendants ask the Court bifurcate discovery based upon representations that the work performed by Plaintiff and the proposed Rule 23 Class is not compensable and the length of time is de minimis. This is a factual argument that can only be determined by the Court after discovery is completed.

The standard for splitting class certification discovery and class merits discovery is governed by Rule 23 and the Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*. In *Dukes,* the Supreme Court held that the "rigorous analysis" necessary for certifying a class "will entail some overlap with the merits of the plaintiff's underlying claim. The class determination generally involves considerations that are enmeshed in the factual and

---

[1] Upon a thorough review of Defendants' application to bifurcate discovery, the undersigned could not find any argument by Defendants that Plaintiff's job duties are different than the other Customer Service Representatives ("CSR").

legal issues comprising the plaintiff's cause of action." *Chow v. Sentosacare, LLC*, 2020 U.S. Dist. LEXIS 20770, at * 4-5 (S.D.N.Y. Jan. 23, 2020) *citing Dukes*, 564 U.S. 338, 351 (2011). Due to the rigorous analysis required by *Dukes*, Courts are reluctant to bifurcate class-related discovery from discovery on the merits." *Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 300 (S.D.N.Y. 2012) (collecting cases).

The Second Circuit cases cited by Defendants in support of their motion to bifurcate are not analogous. In these cases there were material issues as to whether the respective plaintiff's job duties were different than that of the proposed class. Here, this issue is not present. Defendants do not argue that Plaintiff's job duties were different then the proposed Rule 23 Class or that he worked a different schedule.

In *Cucinotta v. Personal Touch Home Care of N.Y., Inc.,* No. 19-cv-00057 (SJF) (AYS), dkt. No. 56 (E.D.N.Y. Nov. 14, 2019) the plaintiff brought a wage and hour lawsuit under both the Fair Labor Standards Act as well as Maryland state law. In their application, Defendants in *Cucinotta* further noted that Cucinotta alleged that she was deprived of overtime pay under the FLSA because she was paid under a quasi-salary-based compensation scheme that was inconsistent with exempt status under the FLSA rules governing the "white collar" exemptions. The defendants in *Cucinotta* argued that this was not accurate.

It was clear that because there was a factual dispute as to whether plaintiff was exempt, bifurcated discovery made practical sense. Here, no such questions exist with respect to Watterson's employment. Watterson, along with the rest of the proposed Class are non-exempt employees that performed identical work. A copy of the defendants' motion to bifurcate in *Cucinotta* is annexed as Exhibit A.

The second Second Circuit case Defendants rely upon, *Kuznetsov v. ExpressSpa-Jdee JV, LLC*, 10-cv-3473 (KAM) (JMA), Dkt No. 23 (E.D.N.Y. Mar. 25, 2011), also has no bearing on this matter. Judge Azrack's granted the defendants' request to bifurcate discovery because "Defendants asserted that most of the named plaintiffs will be subject to unique defenses, thereby making them inadequate class representatives for purposes of Federal Rule of Civil Procedure." *See* pg. 1-2 of Judge Azark's decision which is annexed as Exhibit B.

The third and final case from the Second Circuit cited by Defendants is  Lola v. *Skadden, Arps, et uno.*, No.13-cv-5008.  In *Lola*, Judge Sullivan ordered bifurcated discovery "on the issue of whether the work of the named Plaintiff and the two opt-in plaintiffs constituted the practice of law under North Carolina law." Obviously, no such issues are present in this matter and, as previously noted, Defendants do not contend that Plaintiff's job duties were different than other CSRS. A copy of Judge Sullivan's order is annexed as Exhibit C.

In further support of their position that Watterson's claims are without merit and that as a result discovery should be bifurcated Defendants cite to *Integrity Staffing Solutions, Inc. v. Busk*, 135 S. Ct. 513, 516 (2014). As noted by Defendants, the Supreme Court found employees were not entitled to recover wages for time spent ensuring that they did not steal from their employer. This matter is distinguishable as Defendants require of

Plaintiff and the proposed Rule 23 to perform specific unpaid preparatory activities to begin their collection work. Specifically, Plaintiff had to turn on his computer and log into the phone system (InContact) in advance of the "official" scheduled shift. *See* ¶¶ 10, 12 of Watterson's declaration in support of conditional certification which is annexed as Exhibit D.

It is well settled that if the "preparatory activities" cited by a plaintiff form an integral part of the principal activity of their respective jobs, there remains at least an issue of fact whether those activities should be compensable under the FLSA. *See Quintanilla v. Suffolk Paving Corp.*, 2019 U.S. Dist. LEXIS 30664, at *103 (E.D.N.Y. Feb. 22, 2019) (finding that pre-shift work activities including prep work were not as a matter of law de minimis); *see also Mitchell v. King Packing Co.*, 350 U.S. 260, 262-63 (1956) (finding that butchers should be compensated for the time spent before and after their shifts sharpening their knives because having "razor sharp knives" was an integral part of and indispensable to the various butchering activities for which they were principally employed); *see also Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 719 (2nd Cir. 2001) (reversing grant of summary judgment when questions of material fact existed as to whether x-ray technicians' pre-shift activities, which included turning on, warming up, and testing the x-ray machine, were undisputedly "necessary for the proper performance of her job).

In *Kosakow*, in determining whether the morning preparation work was properly excluded as de minimis, the Second Circuit evaluated (1) the practical administrative difficulty of recording the additional time; (2) the size of the claim in the aggregate; and (3) whether the claimants performed the work on a regular basis. Id. Applying the *Kosakow* factors, Plaintiff and the FLSA Collective should be compensated for their unpaid labor.

Here, the administrative difficulty of recording the additional time is non-existent. The clock in records reflect when Plaintiff and the proposed Rule 23 Class clocked in and, upon review in comparison with their paystubs, we can ascertain exactly the amount of time for which they were not paid. For these reasons, the size of the claim of the aggregate—seven minutes—is not inconsequential. Indeed, Defendants themselves have acknowledged that Watterson is owed unpaid wages. Finally, Plaintiff and the Rule 23 Class performed this work on a regular basis as it was a mandated part of their employment with Defendants. *See Perez v. G&P Auto Wash,* 930 F. Supp.2d 423, 430, 432 (E.D.N.Y. 2013) (in finding that the plaintiffs' work was not de minimis, the Court noted that the plaintiffs were regularly assigned to perform the work in question).

Respectfully,

*/s Jacob Aronauer*
Jacob Aronauer

**Via ECF**
*All attorneys on record*

# EXHIBIT A

Representing Management Exclusively in Workplace Law and Related Litigation

# jackson|lewis.

| | | |
|---|---|---|
| Jackson Lewis P.C. | ALBANY, NY | GREENVILLE, SC | MONMOUTH COUNTY, NJ | RALEIGH, NC |
| 58 South Service Road | ALBUQUERQUE, NM | HARTFORD, CT | MORRISTOWN, NJ | RAPID CITY, SD |
| Suite 250 | ATLANTA, GA | HONOLULU, HI* | NEW ORLEANS, LA | RICHMOND, VA |
| Melville, New York 11747 | AUSTIN, TX | HOUSTON, TX | NEW YORK, NY | SACRAMENTO, CA |
| Tel 631 247-0404 | BALTIMORE, MD | INDIANAPOLIS, IN | NORFOLK, VA | SALT LAKE CITY, UT |
| Fax 631 247-0417 | BIRMINGHAM, AL | JACKSONVILLE, FL | OMAHA, NE | SAN DIEGO, CA |
| www.jacksonlewis.com | BOSTON, MA | KANSAS CITY REGION | ORANGE COUNTY, CA | SAN FRANCISCO, CA |
| | CHICAGO, IL | LAS VEGAS, NV | ORLANDO, FL | SAN JUAN, PR |
| | CINCINNATI, OH | LONG ISLAND, NY | PHILADELPHIA, PA | SEATTLE, WA |
| | CLEVELAND, OH | LOS ANGELES, CA | PHOENIX, AZ | ST. LOUIS, MO |
| | DALLAS, TX | MADISON, WI | PITTSBURGH, PA | TAMPA, FL |
| | DAYTON, OH | MEMPHIS, TN | PORTLAND, OR | WASHINGTON, DC REGION |
| | DENVER, CO | MIAMI, FL | PORTSMOUTH, NH | WHITE PLAINS, NY |
| | DETROIT, MI | MILWAUKEE, WI | PROVIDENCE, RI | |
| | GRAND RAPIDS, MI | MINNEAPOLIS, MN | | |

*through an affiliation with Jackson Lewis P.C., a Law Corporation

MY DIRECT DIAL IS: (212) 545-4005
MY EMAIL ADDRESS IS: BRENDAN.SWEENEY@JACKSONLEWIS.COM

October 28, 2019

**VIA ECF**
Hon. Sandra J. Feuerstein
United States District Judge
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

        Re:    Cucinotta v. Personal Touch Holding Corp. and Personal Touch
               Home Care of Baltimore, Inc.
               Civ. Action No.: 2:19-cv-00057 (SJF) (AYS)

Dear Judge Feuerstein:

        We represent Defendants in the above-referenced matter. A status conference is scheduled for November 14, 2019. The instant application regarding proper case handling in this Fair Labor Standards Act ("FLSA") matter is based on Section 5(B) of the Court's Individual Rules. Defendants' intention is to "obviate[e] the need for expensive, time-consuming and burdensome discovery practice."

        The sole named Plaintiff in this case, Christine Cucinotta ("Cucinotta"), was employed as a Registered Nurse and paid a salary in excess of $1,500.00 per week during the entire time she was a full-time employee (July 2014 through March of 2017). Her claims in this case are brought under the FLSA and Maryland wage and hour laws ("MWHL"). She alleges that she was deprived of overtime pay under the FLSA because she was paid under a "quasi-salary-based compensation scheme" that is inconsistent with exempt status under the FLSA rules governing the "white collar" exemptions. However, this is untrue. Cucinotta was never "penalized" as alleged in the Amended Complaint, and she received a fixed salary in conformity with the salary basis regulations.[1]

        Setting a limited period for initial discovery focused on the merits of Cucinotta's claims and allowing for a motion for summary judgment, before addressing conditional certification or class certification, is the most efficient way to manage this case.

---

[1] Suffice to say, the level of that salary, more than $1,500.00 per week, was more than three times the minimum salary level required for exempt status under the FLSA of $455/week.

# jackson|lewis.

**Background**

Plaintiff was employed by Defendant Personal Touch Home Care of Baltimore, Inc. ("PT-Baltimore") as a Registered Nurse performing home health care services in Maryland. (Dkt. No. 31 ("Amended Complaint") ¶ 8). Plaintiff claims that she and similarly situated individuals were paid pursuant to a "quasi-salary-based pay scheme." (Am. Compl. ¶ 17). Plaintiff does not dispute that she and other members of the proposed collective performed exempt duties,[2] she challenges only the salary basis aspect of exempt status, claiming that this "quasi-salary-based compensation scheme [] does not meet either the salary-basis requirement or the fee-basis requirements of the FLSA and MWHL." (Id.)

Plaintiff was not paid using a "quasi-salary-based compensation scheme." Quite simply, during the time that she was employed full-time by PT-Baltimore, Plaintiff was paid a salary. On March 12, 2019, counsel for Defendants provided counsel for Plaintiffs with the attached Declaration of Patricia Heagy, who was the Administrator of PT-Baltimore, along with the attached pay records. PT-Baltimore's records show that from July 25, 2014 to March 24, 2017, Cucinotta was paid a salary that was never less than $1,586.00 per week. Cucinotta's salary was never reduced based on a "minimum productivity requirement" as alleged in the Amended Complaint. (Am. Compl. ¶ 19).[3]

**Defendants' Proposed Scheduling Order**

The Court should set a schedule that allows for limited discovery and a motion for summary judgment on the merits of Plaintiff's claims. Given the evidence discussed above, the Court should postpone Plaintiff's anticipated motion for conditional certification during the pendency of Defendants' motion for summary judgment. See, e.g., Kuznetsov v. XpresSpa-Jdee JV, LLC, No. 10-cv-3473 (KAM) (JMA), Dkt. No. 23 (E.D.N.Y. Mar. 25, 2011) (ordering a bifurcated discovery schedule for individual discovery and class discovery, as this approach "best strikes a balance between judicial and resource economy, and prevention of prejudice to prospective class members"); Lola v. Skadden, Arps, Meagher, Slate & Flom, LLP et al., No. 13-cv-5008, Dkt. No. 48 (S.D.N.Y. Sept 11, 2015) (allowing limited discovery on a determinative factor and an expedited summary judgment motion to proceed);[4] see also Ellis v. J.R.'s Country Stores, Inc., No. 12-cv-01916, 2012 U.S. Dist. LEXIS 175257, at **6-7 (D. Colo. Dec. 11, 2012) (granting defendant's motion to stay plaintiffs' conditional certification motion pending ruling on defendant's motion for summary judgment based on the likelihood of success of motion and conservation of parties' resources); McAninch v. Monro Muffler Brake, Inc., 799 F. Supp. 2d 807, 809, 820 (S.D. Ohio 2011) (granting summary judgment dismissing three named plaintiffs' FLSA claims following stay of plaintiffs' motion for conditional certification). Should Defendants prevail at the summary judgment stage on the threshold issue of compliance with the

---

[2] See generally 29 C.F.R. § 541.301(e)(2).
[3] Cucinotta was paid differently when she was a part-time employee during the periods April 2013 through July 2014, and again from April 2017 through September 2017, but she worked far less than forty hours during these periods, consistent with her part time status.
[4] All unpublished orders are attached to this letter for ease of reference.

# jackson|lewis.

salary basis test, such a decision will resolve Cucinotta's federal causes of action, obviating the need for discovery or motion practice related to conditional certification.[5]

Delaying a motion for certification pending a motion for summary judgment is appropriate where collective or class wage-hour claims would become "moot when [Plaintiff's] individual claim became moot, because she lacked any personal interest in representing others in this action." Genesis Healthcare Corp. v. Symczyk, 133 S. Ct. 1523, 1529 (2013); see also Clarke v. JPMorgan Chase Bank, N.A., 2010 U.S. Dist. LEXIS 33264, at *69 (S.D.N.Y. Mar. 26, 2010) (granting Defendant's motion for summary judgment and denying motion for collective action certification as moot).

To prevail on a motion for conditional certification, a plaintiff must show that she and the proposed collective were subjected to a common policy that violates the FLSA. Myers v. Hertz Corp., 624 F.3d 537, 555 (2d Cir. 2010). Defendants anticipate that Plaintiff will attempt to conditionally certify a collective that includes individuals who worked for PTHC subsidiaries outside of Maryland that used policies that are entirely different from the policies that applied to Cucinotta's employment. Defendants will respond by producing evidence that demonstrates there is no factual nexus between employees of PT-Baltimore and employees of other PTHC subsidiaries. In recent years, courts have rejected efforts to conditionally certify broad collective actions where the Plaintiff could not show that members of the proposed collective were actually subject to a common policy that potentially violates the FLSA. See, e.g., McDermott v. Fed. Sav. Bank, 2018 U.S. Dist. LEXIS 65448 (E.D.N.Y. April 18, 2018); Korenblum v. Citigroup, Inc., No. 15-CV-3383 (JMF) (S.D.N.Y. July 19, 2016); Martin v. Sprint/united Mgmt. Co., No. 15 Civ. 5237 (PAE), 2016 U.S. Dist. LEXIS 352 (S.D.N.Y. Jan. 4, 2016).

Defendants propose that the parties first conduct limited discovery regarding the manner in which PT-Baltimore paid Plaintiff, then a briefing schedule be set for their motion for summary judgment, followed by a subsequent briefing schedule for Plaintiff's motion for conditional certification, if necessary.

Defendants have conferred with counsel for Plaintiff regarding this proposal, which was rejected.

Respectfully submitted,

JACKSON LEWIS P.C.

Brendan Sweeney

cc:      Counsel of Record (via ECF)
4820-3040-1186, v. 4

---

[5] Should Defendants succeed in obtaining dismissal of Plaintiff's FLSA claim, this Court should not retain jurisdiction over any remaining state law claims. See e.g., Krumholz v. Northport, 873 F. Supp. 2d 481, 492 (E.D.N.Y. 2012).

# EXHIBIT B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ULYANA KUZNETSOV, *et al.*, on behalf of
themselves and all others similarly situated,

                    Plaintiffs,

                -against-

XPRESSPA-JDEE JV, LLC, *et al.*,

                    Defendants.
------------------------------------------------------------------------X

                                               **ORDER**
                                               **10-CV-3473 (KAM) (JMA)**

A P P E A R A N C E S :

C.K. Lee
30 East 39th Street
2nd Floor
New York, NY 10016
        *Attorney for Plaintiffs*

Edward Cerasia, II
Christie Del Rey-Cone
Courtney Sophie Taymour
Seyfarth Shaw LLP
620 Eighth Avenue
New York, NY 10018-1405
        *Attorneys for Defendants*

**AZRACK, United States Magistrate Judge:**

On March 23, 2011, the parties submitted a joint letter regarding their proposals for a discovery plan, and requesting a conference before me. ECF No. 22. Based on the parties' letter, I find that a conference is unnecessary and hereby SO ORDER the joint discovery schedule.

However, the parties disagree as to a schedule for plaintiffs' proposed motion for conditional and/or class certification. Defendants indicate that each of the named plaintiffs may well have been properly paid as "commission" employees under the Fair Labor Standards Act

("FLSA") and New York Labor Law ("NYLL"), such that no liability can be established as to any named plaintiff.  Defendants also assert that most of the named plaintiffs will be subject to unique defenses, thereby making them inadequate class representatives for purposes of Federal Rule of Civil Procedure 23.  Defendants therefore propose bifurcating discovery into "phases," with the first phase of discovery ending on July 29, 2011, and focusing exclusively on the named plaintiffs' wage and discrimination claims.  Plaintiffs argue that a bifurcated discovery schedule will delay the FLSA class "opt in" period, thereby prejudicing prospective class members whose claims are subject to a running statute of limitations.

I find that defendants' bifurcated discovery schedule best strikes a balance between judicial and resource economy, and prevention of prejudice to prospective class members.  A phase one deadline of July 29, 2011, will not substantially delay plaintiffs' prospective motion for conditional and/or class certification.  The parties shall therefore conduct discovery as to the named plaintiffs' claims only until July 29, 2011.  An in-person conference is hereby scheduled for July 29, 2011, at 11:00 AM, at which phase two of discovery will be planned.

SO ORDERED.

Dated: March 25, 2011
       Brooklyn, New York

                                   /s/
                                   JOAN M. AZRACK
                                   UNITED STATES MAGISTRATE JUDGE

# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-11-15
```

---

DAVID LOLA, *on behalf of himself and all
others similarly situated,*

                   Plaintiffs,

   -v-

SKADDEN, ARPS, MEAGHER, SLATE &
FLOM LLP, *et uno,*

                 Defendants.

---

No. 13-cv-5008 (RJS)
<u>ORDER</u>

<u>RICHARD J. SULLIVAN</u>, District Judge:

      As set forth on the record during the pre-motion conference held in this action yesterday, IT IS

HEREBY ORDERED THAT Defendants shall respond to the Complaint by September 30, 2015.  In

addition, discovery in this action shall be bifurcated, with a view toward an expedited summary

judgment motion.  Accordingly, IT IS FURTHER ORDERED THAT the parties shall complete

individual discovery by January 31, 2016 on the issue of whether the work of the named Plaintiff and

the two opt-in plaintiffs constituted the practice of law under North Carolina law.  IT IS FURTHER

ORDERED THAT the parties will submit a joint letter to the Court on January 31, 2016, apprising the

Court as to whether they intend to proceed with summary judgment motions on the issue of whether

plaintiffs were engaged in the practice of law.  In the event that either or both parties wish to make

such a motion, they shall submit pre-motion letters in accordance with Rule 2A of my Individual

Practices.

SO ORDERED.

Dated:      September 11, 2015
             New York, New York

                                     RICHARD J. SULLIVAN
                                     UNITED STATES DISTRICT JUDGE

# EXHIBIT D

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
ERIC WATTERSON,
on behalf of himself and all others
similarly situated,

                            Plaintiff,              20-cv-01783-SJK-AKT

    -against-

RUI MANAGEMENT SERVICES, INC.
and EVAN REITER, individually,

                          Defendants.
---------------------------------------------------------------X

      ERIC WATTERSON declares pursuant to 28 U.S.C. § 1747 under penalty of perjury that the following is true and correct:

1. I worked at the establishment RUI Management Services owned by Evan Reiter ("Defendants") , located at 1305 Walt Whitman Rd., Melville, New York 11747.

2. I was employed as a Debt Collector at RUI Management Services from February 2018 through October 2018.

3. On information and belief, RUI Management Services employs approximately 200 other people as Debt Collectors at our location.

4. Throughout my employment with Defendants, I worked at least five days per week.

5. Throughout my employment with Defendants, I worked Monday through Friday.

6. Throughout my employment with Defendants, I also regularly worked on Saturdays and Sundays.

7. Throughout my employment with Defendants, I was required to clock in exactly 7 minutes early.

8.  Annexed as Exhibit A are time and paystub records from my employment with Defendants.

9.  As a result of this policy by Defendants, I was not paid for all work performed in violation of the Fair Labor Standards Act and the New York Labor.  In addition, I was not paid time and one half for all of the work I performed after 40 hours in a given week.

10. Defendants required me to come in early because they wanted me to turn on my computer and log in to the phone system (InContact) in advance of the "official" scheduled shift.

11. I have put the word "official" in quotes because the reality was that my shift started 7 minutes before the beginning of my "official" shift.

12. While logging into RUI's system is straight forward, it does take time.

13. I was required to arrive early because Defendants required me (as well as the other Debt Collectors) to be ready to receive and make calls from the first minute of my scheduled "official" shift.  It takes approximately 7 minutes to turn on the computer and login to InContact.

14. A sign was posted next to the clock in/clock out station telling employees they must clock in 7 minutes before the start of their "official" shift.

15. Due to Defendants' official policy of rounding time worked to the nearest quarter hour, however, I was never paid for these extra 7 minutes worked.

16. The other Debt Collectors were required by Defendants to clock in 7 minutes early, or risk being terminated from their positions.

17. The Chief Executive Officer of RUI Management Services is Evan Reiter ("Reiter").

18. My supervisor at RUI Management Services was Dan Sapp ("Sapp") .

19. Sapp explicitly told me on several occasions to be sure to clock in 7 minutes early so I could do the preliminary work required to take calls at the start of my "official" shift.

20. Sapp told me that employees had been terminated for their failure to login and ready their computers in advance of the start of their "official" shift.

21. Sapp further informed me that he had terminated employees who arrived less than 7 minutes for the start of their scheduled shift.

22. My coworkers Benjamin Luciano and Joanne Doe worked similar—if not identical— shifts as me.

23. Like me, Luciano and Joanna worked Monday through Friday and frequently on the weekends.

24. Like me, they were required to clock in 7 minutes before the start of their official start program to perform the "set up" work previously discussed.

25. And like me, they were not compensated for having to clock in 7 minutes before the start of their official shift.

26. I know this because both Luciano and Joanna complained to me that they were required to clock in 7 minutes early but were not compensated for their labor.  In addition, they complained to me that they were not paid time and one half for all work performed after 40 hours due to the fact that Defendants made them work an additional 7 minutes each workday without compensation.

27. Luciano and Joanna told me the information listed in the above paragraphs when they were both employed by RUI Management service.

28. They told this to me when we were both employed by Defendants.  Joanna told this to me on a cigarette break and Luciano told this to me during lunch.

Dated:   July ____2020
         New York, New York

                                                    _____
                                                           Eric Watterson

3

Dated: July 6, 2020
New York, New York

Eric Watterson