UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ERIC WATTERSON, on behalf of himself
and other similarly situated,

                        Plaintiffs,             **MEMORANDUM DECISION**
                                           **AND ORDER**

        -against-

                                      20-CV-1783 (GRB)(JMW)

RUI MANAGEMENT SERVICES, INC. and
EVAN REITER, individually,

                        Defendants.
------------------------------------------------------------X

Yale Pollack
Jacob Aronauer
**Law Offices of Yale Pollack, P.C.**
66 Split Rock Road
11791
Syosset, NY 11779
*For Plaintiffs*

Brendan Sweeney
**The Law Office of Christopher Q. Davis**
80 Broad Street
Suite 703
New York, NY 10004
*For Defendants*

**WICKS,** Magistrate Judge:

       Plaintiff, Eric Watterson, commenced this action against his former employer, a debt

collection company called RUI Management Services Inc. and its owner, Evan Reiter, for

alleged violations under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* and

New York Labor Law.  He brings this action not only to vindicate his own rights, but

purportedly also on behalf of other current and former debt collectors at RUI.  And what are the

alleged violations? Failure to pay minimum wages, failure to pay overtime compensation, and

failure to provide the required wage notices and statements are the claims asserted.  Before the Court is Plaintiff's motion to conditionally certify this as a collective action under the FLSA pursuant to 29 U.S.C. § 216(b).  (DE 55.)  For the reasons that follow, Plaintiff's motion is GRANTED in part and DENIED in part.

## I.      RELEVANT PROCEDURAL BACKGROUND

Plaintiff filed the Complaint on April 13, 2020 and, in turn, Defendants answered on June 22, 2022.  (DE 1; DE 15.)  Plaintiff initially served a motion for conditional certification upon Defendants on July 15, 2020.[1]  On July 23, 2020, the Court stayed motions for conditional certification and class certification pending a determination of any motion for summary judgment on the merits of Plaintiff's individual claims or further order of the Court.  (DE 26.) The Court simultaneously granted Defendants' motion (DE 17) for bifurcation of individual discovery and class discovery.  (DE 26.)  Specifically, the Court directed the parties to complete discovery as to Defendants' compensation policies and the nature of the activities which Plaintiff performed, and to complete Plaintiff's deposition, by October 28, 2020.  (*Id.*)

During the limited period of discovery Plaintiff was deposed, Defendant Reiter was deposed, and three non-parties were deposed: Daniel Sapp (a former supervisor at RUI), Rebecca White (a supervisor at RUI), and Michael Russell (Vice President of Operations at RUI).  (DE 65, Ex. D-G.)  Defendants initially filed a motion for summary judgment on April 12, 2021.  (DE 44.)  The case was thereafter re-assigned to the Honorable Gary R. Brown and Defendants withdrew the motion with leave to renew after Judge Brown held a pre-motion conference. (Electronic Order dated June 4, 2021; Electronic Order dated June 15, 2021.)  On June 30, 2021, Defendants filed a letter motion for a pre-motion conference in anticipation of re-filing a

---

[1] The motion does not appear on the docket because Plaintiff served the motion in accordance with the Honorable Sandra J. Feuerstein's "bundle rule."  (*Id.*)

summary judgment motion, (DE 48), and Judge Brown granted the request.  (Electronic Order dated July 1, 2021.)  Plaintiff filed opposition (DE 50) and at the September 20, 2021 motion conference, Defendants' summary judgment motion was denied on the record.  (DE 51.)  On October 12, 2021, the Honorable A. Kathleen Tomlinson directed Plaintiff to proceed, if still desired, with the anticipated motion for conditional certification.  (Electronic Order dated Oct. 12, 2021.)[2]  On October 20, 2021, Plaintiff filed the subject motion seeking conditional certification.  (DE 55-DE 59.)  Defendants submitted opposition on November 18, 2021 (DE 61-DE 62) and Plaintiff replied on December 10, 2021.  (DE 64-DE 65.)   On August 8, 2022, the Honorable Gary R. Brown referred the motion to the undersigned to issue a decision.  (Electronic Order dated Aug. 8, 2022.)

Plaintiff requests the Court to conditionally certify this case as a collective action. Plaintiff argues that he has met the standard to show that he is similarly situated to the other debt collectors that suffered violations of the FLSA by Defendants' failure to pay overtime wages and minimum wages due to time shaving.  (DE 56 at 12.)  Plaintiff further argues that the debt collectors would benefit from prompt Court-authorized notice, and that equitable tolling should be applied to all potential opt-in plaintiffs' statute of limitations.  (*Id.* at 14-15.)  Defendants argue that Plaintiff's evidence is contradictory and that he cannot meet his burden to show a violation of the FLSA, and that he has failed to establish the requisite factual nexus between himself and members of the proposed collective.  (*See generally* DE 61.)  Defendants further assert that equitable tolling is inapplicable.  (*Id.* at 18-20.)  Defendants suggest that if the Court grants conditional certification, the parties should meet and confer regarding a proposed notice. (*Id.* at 20.)

---

[2] On November 19, 2021, this action was reassigned from Magistrate Judge Tomlinson to the undersigned.  (Electronic Order dated Nov. 19, 2021.)

## II.   FACTUAL BACKGROUND

***Complaint and Declaration in Support***

Plaintiff alleges the following: From February of 2018 to October of 2018, Plaintiff worked as a phone operator to collect unpaid bills, or a "debt collector,"[3] for RUI, a company owned and operated by Defendant Reiter.  (DE 1 ¶¶ 1, 12.)  Throughout Plaintiff's employment, he was scheduled to work at least five days per week (usually Monday – Friday, but sometimes Saturdays and Sundays), and at least forty hours each week.  (*Id.* ¶¶ 46-48, 50.)  Plaintiff's typical hours were 11:53 a.m. to 9:00 p.m.  (*Id.* 1 ¶ 49.)  While his schedule varied, Plaintiff's shifts were always nine hours and seven minutes long with a one-hour break.  (*Id.* ¶¶ 51-52.)

Defendants required Plaintiff to arrive and clock in at least seven minutes ahead of his official start time so that he could start his computer and log into the necessary systems, and be ready to begin calls exactly at his scheduled start-time.  (*Id.* ¶¶ 53-55.)  Otherwise, Plaintiff could face disciplinary consequences such as termination.  (*Id.* ¶ 56.)  Defendants posted a sign next to the sign-in clock advising employees of this seven-minute requirement.  (*Id.* ¶ 57.)  Defendants tracked debt collectors' time by using a rounding policy, whereby they rounded hours to the nearest fifteen-minute increment, meaning that employees would only get credit for working to the nearest quarter of an hour.  (*Id.* ¶ 58.)  Sign in/out times were recorded and included in Plaintiff's pay stubs, but Defendants never compensated Plaintiff for the extra seven minutes he worked per shift.  (*Id.* ¶¶ 60-61.)  Based on this system, for certain weeks, Plaintiff was only credited with working from 12:00 PM, despite clocking in at 11:53 AM.  (*Id.* ¶¶ 63-64.)

---

[3] Plaintiff refers to himself and those who are asserted to be similarly situated as "debt collectors."  In opposition, Defendants refer to Plaintiff and those Plaintiff asserts as similarly situated as "customer service representatives."  For purposes of uniformity, the Court will herein use the term "debt collector(s)."

Plaintiff alleges that Defendants failed to pay the applicable minimum wage rate for all of the hours he worked, failed to pay overtime wages, and failed to provide annual wage notices and statements.  (*See generally* DE 1.)

In support of the motion for conditional certification, Plaintiff has submitted a declaration attesting to certain facts relevant to the subject motion.  (*See generally* DE 59.)  In sum, Plaintiff repeats many of the same facts pled in the Complaint regarding his own employment, provides additional information regarding the circumstances of his employment, and also states that the manner in which he was paid is substantially similar to how Defendants paid the approximately 180 other debt collectors.  (*Id.*)

To make and receive calls, debt collectors at RUI needed three different systems to be running on their computers: "CSG," "Einstein," and "InContact."  (*Id.* ¶ 10-11.)  Before shifts began, Plaintiff would need to turn on his computer, log into each system, and enter usernames and passwords for each system.  (*Id.* ¶ 10.)  The CSG system also required Plaintiff to put in debtors' information.  (*Id.*)  This set-up process took between five to seven minutes, depending on whether the computer was on already, whether systems were running slow, or whether a password needed to be changed.  (*Id.* ¶12.)  Plaintiff's supervisor, Daniel Sapp, told him that he should not come in earlier than seven minutes before his start time, but that he was permitted to clock in any time from 8:53 AM to 8:59 AM before his 9:00 AM start time so that he was ready to start fielding calls as soon as the shift began.  (*Id.* ¶ 6.)  Additionally, RUI posted a sign in the clock-in area that read in part:

> Going forward, an agent is expected to <u>Clock In no earlier than 7 minutes before their start time</u>.  For example, an agent starting at 9:00 am would be expected to *clock in* between 8:53 and 9:00 am, then proceed to their work station to engage in work activities.  An agent's first call should be taken as soon as their system is up.  Clocking in earlier will be considered unauthorized time and would be considered a policy violation which could result in disciplinary action.

(*Id.* ¶ 9 (citing Ex. A to Declaration (emphasis in original)).)  If Plaintiff was logged into the system prior to the start of his shift, he was expected to begin making and fielding calls.  (*Id.* ¶ 21.)  Plaintiff also attests that if he was on a call when his lunch break started, he was required to complete the call, and was not allowed to extend the time permitted for his hour lunch break. (*Id.* ¶ 13-15.)  For example, if his lunch was scheduled for 1:00 PM and a call ran until 1:05 PM, he still had to get back to work by 2:00 PM and was not compensated for that time, unless the call went an additional eight minutes past the scheduled break's start time.  (*Id.* ¶¶ 15, 31.)  This similarly occurred at the end of his shifts.  (*Id.* ¶ 16.)

Plaintiff specifically identifies two of his co-workers, Benjamin Luciano and Joanne Doe, who he states worked similar, if not identical, shifts as him.  (*Id.* ¶ 38.)  Luciano and Doe worked Monday through Friday, frequently on the weekends, and were requested to come in between seven minutes or less before their official start time to perform the "set up" work.  (*Id.* ¶¶ 39-40.) Similar to Plaintiff, Luciano and Doe were not compensated for having to clock in seven minutes before the start of their official shift.  (*Id.* ¶ 41.)  Both Luciano and Doe complained to Plaintiff that they were required to clock in seven minutes early, but were not compensated for their labor. (*Id.* ¶ 42.)  Luciano and Doe also complained to Plaintiff that they were not paid time-and-a-half for all work performed after forty hours, as a result of Defendants requesting that they come in early to perform related activities, and to work through their lunch and after the end of their shifts to field calls.  (*Id.*)  Luciano told Plaintiff this information during a cigarette break, and Doe told Plaintiff this information during lunch.  (*Id.* ¶¶ 43-44.)

Plaintiff submits an affidavit by Karin Weston, a paralegal at Plaintiff's Counsel's law office, in support of the subject motion.  (DE 58.)  Ms. Weston reviewed Mr. Watterson's time records that Defendants produced, and calculated damages owed to Plaintiff.  (*Id.* ¶ 3.)  Ms.

Weston states that due to RUI's rounding policy, 79.97% of Plaintiff's time was rounded in a manner that favored RUI, 8.07% of Plaintiff's time was rounded in a manner that favored Plaintiff, and 11.96% of Plaintiff's time was not rounded. (*Id.* ¶ 27.) The rounding policy resulted in Plaintiff's loss of 32.97 hours, and gain of 1.13 hours, equaling a net loss of 31.83 hours, which amounts to $706.40 in unpaid wages (not including liquidated damages and the alleged Labor Law violations regarding notices). (*Id.* ¶¶ 24-28.)

Plaintiff also submits a letter from Defendants, sent on June 22, 2020, stating that Plaintiff was owed $42.78[4] in unpaid wages, but Defendants did not specify how the amount was calculated. (DE 57, Ex. A.) Additionally, Plaintiff submits a declaration by non-party supervisor, Russell, who states in part that: debt collectors clock in to RUI's timekeeping system when they arrive at work, but cannot begin performing their job without being logged into InContact; debt collectors are not permitted to punch in to the timekeeping system more than seven minutes before their scheduled shift start time (citing to the memo hung by the time clock); debt collectors are not required to perform their jobs before their scheduled start time, but are expected to be ready to perform their job duties at their scheduled start time; RUI's records which Russell reviewed show that Plaintiff was paid for "virtually all" of the time he was active on InContact except for "2.6 hours of compensable time" amounting to $42.78. (*Id.*, Ex. B.) Russell further states that his review of the records of five other debt collectors confirmed that debt collectors are "typically paid for slightly more time than they are logged into InContact." (*Id.*) The declaration does not state whether Plaintiff was owed unpaid overtime or unpaid minimum wages (*i.e.*, whether the 2.6 hours fell within a week where Plaintiff worked forty hours or more). (*Id.*; DE 56 at 10.) Russell's calculations were based on reviewing InContact

---

[4] Plaintiff's affirmation in support states the amount owed as $42.71.

records as opposed to ADP records, which is how RUI calculates the amount of money owed to debt collectors.  (*Id.*)

### Defendants' Testimony[5]

Sapp testified that it was RUI's preference that all three systems, CSG, Einstein, and InContact would be opened up by the time that debt collectors started their shifts.  (DE 57, Ex. F at 44.)  Russell testified that prior to starting their shift, debt collectors needed to clock into the time clock system, boot up their computers, and start InContact and the customer system.  (DE 57, Ex. E. at 23-24.)  White testified that in order for a debt collector to perform their job, they have to boot up their computer, sign into the computer and open up the three applications, CSG, Einstein, and InContact, and that debt collectors are expected to perform those tasks before their scheduled start time.  (DE 57, Ex. G at 36-40.)

### Defendants' Declarations

Defendants submit declarations by four non-party RUI employees.  (DE 62, Ex. B.) These four employees were not disclosed in initial disclosures or in response to Plaintiff's interrogatories.  (DE 64 at 2-3 (citing DE 65 at Ex. A-B)).  Ciera Purvis, a current manager, states that she would usually arrive to work two hours early to avoid traffic, clock in at that time, and was never disciplined or penalized for working more than two hours before her scheduled start time.  (*Id.*)  As long as Purvis was ready to begin working within seven minutes of her scheduled start time, she was not disciplined or penalized.  (*Id.*)  If a call ran after the end of her shift, she was paid for that time.  (*Id.*)  Marsia Lopez, a current supervisor and trainer, states that

---

[5] Defendants also cite Plaintiff's deposition transcript various times throughout the opposition yet fail to attach a copy of the transcript.  Additionally, there are multiple instances that Defendants set forth arguments and cite to their Rule 56.1 Statement and Plaintiff's Response (which was before Judge Brown), yet upon the Court's review, it is clear that many of the contentions are taken out of context or completely disputed.

8

RUI does not have a policy requiring debt collectors to take calls immediately at the start of their scheduled shift, and that as long as she is ready to begin working within seven minutes of her scheduled start time, she has not been disciplined or penalized.  (*Id.*)  Lopez and Purvis also state that if a call ran into their scheduled lunch time or end of shift, they were paid for that time and afforded the full one-hour break.  (*Id.*)  Rosa Perez, a current supervisor, and Yvonne Falcon, a former debt collector, both state that RUI does not have a policy, practice, or expectation that debt collectors perform any work, including booting up, before the scheduled start time of shifts.  (*Id.*)  Perez and Falcon state that they were never required or expected to start taking calls within the first minute of their shifts and that they were afforded a seven-minute grace period if they had a system issue or other delay.  (*Id.*)  Perez and Falcon further state that if a call ran into their scheduled lunch break, they would start the break from the moment they clocked out and advise their supervisor, so that they were afforded the full hour.  (*Id.*)  Additionally, Perez and Falcon explain they often clocked out before the end of their shifts, however on limited occasions, a call would run over the end of their shifts.  (*Id.*)  In such instances, they would go home shortly after the call, and were not expected or required to continue working.  (*Id.*)  Purvis, Perez, and Falcon all state that as long as they were ready to begin within seven minutes of their start time, they were not disciplined or penalized.  (*Id.*)

### III.   <u>STANDARD</u>

A plaintiff bringing a claim under 29 U.S.C. § 206 (Minimum wage) and/or 29 U.S.C. § 207 (Maximum hours), may proceed under § 216(b) "for and in behalf of himself or themselves and other employees similarly situated[,]" or what is known as a collective action.  *Rivera v. Harvest Bakery Inc.*, No. CV 13-00691(ADS)(GRB), 2014 WL 3611831, at *2 (E.D.N.Y. July 7, 2014) (quoting 29 U.S.C. § 216(b)).  "The sole consequence of conditional certification is the

sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court." *Id.* at *3 (citation omitted).

Under the FLSA, a collective action differs from a typical class action in that it does not require numerosity, commonality, typicality, and adequate representation. *Id.* at *2 (citations omitted). "Because it is discretionary, a motion for conditional certification involves a far more lenient standard than a motion for class certification under Rule 23 of the Federal Rules of Civil Procedure." *Diaz v. Weinstein Landscaping*, 19-CV-06050 (JMA) (ST), 2022 WL 801493, at *3 (E.D.N.Y. Feb. 28, 2022), *report and recommendation adopted by* 2022 WL 801322 (E.D.N.Y. Mar. 16, 2022) (internal quotation marks and citation omitted). In this Circuit, collective action certification is analyzed using a two-step process: *first,* conditional certification, which usually takes place before significant discovery; and *second*, after discovery, the court determines whether the claimants are similarly situated, and if so the collective action proceeds to trial – otherwise the class is decertified, opt-in plaintiffs' claims are dismissed without prejudice, and the class representatives may proceed on their own claims.[6] *Puglisi v. TD Bank, N.A.*, 998 F. Supp. 2d 95, 99-100 (E.D.N.Y. 2014). Here, the subject motion concerns just the first step. That is, whether the proposed opt-in plaintiffs are "similarly situated" warranting conditional certification.

At the first step the burden is minimal. The analysis only requires a "modest factual showing sufficient to demonstrate that [plaintiffs] and potential plaintiffs together were victims

---

[6] Notably, a company sued in New Jersey for similar allegations of requiring employees at a call center to perform uncompensated pre/post shift tasks such as booting up their computers and logging onto a system, recently filed a request to the U.S. Supreme Court on August 22, 2022, asking the Court to pause the district court's decision applying the two-step process for collective class certification. The company, Maximus Inc., points to a Fifth Circuit decision that came down last year, *Swales v. KLLM Transp. Serv.*, *L.L.C.*, 985 F.3d 430 (5th Cir. 2021) which applied a one-step process that Maximus Inc. asserts would prevent plaintiffs with nothing in common from opting in. (*See Maximus Inc. v. Sharey Thomas et al.*, case number 22A164.)

of a common policy or plan that violated the law." *Id.* at 99 (citing *Jenkins v. TJX Companies Inc.*, 853 F. Supp. 2d 317, 321 (E.D.N.Y. 2012)). At this stage, a named plaintiff need only show that a "factual nexus exists between the plaintiff's situation and the situation of other potential plaintiffs." *Id.* (citing *Calderon v. King Umberto, Inc.*, 892 F. Supp. 2d 456, 459 (E.D.N.Y. 2012)). "[N]othing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan is required." *Sexton v. Franklin First Fin. Ltd.*, No. 08-CV-04950 (JFB)(ARL), 2009 WL 1706535, at *3 (E.D.N.Y. June 16, 2009) (citation omitted). However, a modest factual showing is not satisfied through unsupported assertions or conclusory allegations. *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (citation omitted); *Morales v. Plantworks, Inc.*, No. 05 Civ. 2349(DC), 2006 WL 278154, at *3 (S.D.N.Y. Feb. 2, 2006). With that said, "[a]n FLSA collective action must be conditionally certified as long as the plaintiff['s] allegations are sufficient on their face to support certification – even if such allegations conflict with the account asserted by the defendants." *Valdez v. MichPat & Fam, LLC*, 2022 WL 950450, at *3 n.3 (E.D.N.Y. Mar. 30, 2022) (internal quotation marks and citation omitted.) Courts consider preliminary certification based on the pleadings, affidavits, and declarations a plaintiff submits. *Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475, 480 (S.D.N.Y. 2016) (citation omitted). "[C]ourts do not resolve factual disputes, decide ultimate issues on the merits, or make credibility determinations at the first stage." *Id.* (alteration in original) (internal quotation marks and citation omitted).

"District courts in this circuit have applied a stricter 'modest plus' standard for conditional certification of an FLSA collective action when 'discovery with respect to conditional certification has been completed.'" *Valdez*, 2022 WL 950450, at *7 (quoting *Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475, 482 (S.D.N.Y. 2016)). However, when a

11

conditional certification motion is made after some, but not all, discovery has taken place, "it remains an open question whether some kind of 'intermediate scrutiny' should apply." *Diaz*, 2022 WL 801493, at *3 (quoting *Korenblum*, 195 F. Supp. 3d at 480-81).

In *Jibowu v. Target Corp.*, 492 F. Supp. 3d 87 (E.D.N.Y. 2020), the Court compared the heightened standard to a sliding scale and explained that it was "rooted in efficiency concerns," under which conditional certification should be denied if solicitation of additional opt-ins would not promote efficient resolutions of common issues. *Id.* at 119 (citations omitted). Under the modest-plus standard, courts will consider evidence submitted by both parties, keeping in mind that the body of evidence is incomplete, and will refrain from weighing the merits of the underlying claims while determining whether potential opt-in plaintiffs may be similarly situated. *Diaz*, 2022 WL 801493, at *4 (citing *Jibowu*, 492 F. Supp. 3d at n.34, 39); *see also Brown v. Barnes and Noble, Inc.*, 1:16-cv-07333 (RA) (KHP), 2018 WL 3105068, at *7 (S.D.N.Y. June 25, 2018) ("Importantly, even under this [modest plus] standard, the Court may not resolve factual disputes, decide ultimate issues on the merits, or make credibility determinations.") (internal quotation marks and citation omitted).

Here, the Court finds that a modest-plus standard is the appropriate standard to apply as the parties have engaged in some discovery, including document exchanges and party depositions, which is relied upon on this motion. *See Diaz*, 2022 WL 801493, at *3-4 (applying the modest-plus standard "in light of efficiency concerns" where Plaintiff and Defendant were both deposed, and reiterating that the Court would "consider the evidence obtained in discovery with an understanding that the body of evidence is incomplete.").

## IV.   DISCUSSION

### A.  Conditional Certification

12

Plaintiff argues that even under a modest-plus standard, this action should be conditionally certified as a collective action because all of RUI's debt collectors were treated the same way, in that RUI recommended that they all log in seven minutes or less before their shift start times in order to have their systems ready and begin calls at the time their shifts began.  (DE 56 at 11-13.)  Plaintiff further argues that all debt collectors were subject to a forty-hour work week and not paid for lunch, performed the same log-in process before starting work and compensated based on the same rounding policy, and were required to have overtime approved in order to be compensated at time-and-a-half.  (*Id.* at 13-14.)  Plaintiff points to the notice Defendants hung next to the time clock as proof that all debt collectors were subjected to the same rounding policy.  (*Id.*)  Plaintiff asserts that he has provided sufficient evidence that there is a collective group of debt collectors who performed non-exempt work in excess of forty hours per week without being paid for all hours worked or getting paid overtime, at this juncture, where the Court does not resolve factual disputes or decide issues that go to the merits.  (*Id.* at 14.)

Defendants argue that under the modest-plus standard Plaintiff's motion should be denied because Plaintiff has submitted contradictory declarations and testimony and no "common proof" that he or any other employees of RUI were victims of a common policy or plan that violated the law.  (DE 61 at 8-9.)  Defendants fixate on semantics, arguing that Plaintiff first pleaded and submitted a declaration stating that he was *required* to work seven minutes before the start of his shift, versus his deposition testimony where he stated that he and other debt collectors were *requested* to clock in seven minutes *or less* before the start of their shifts.  (*Id.* at 2-3, 15-17.)  Defendants argue that Plaintiff was not required to work before the start of his shift, and that he understood so, as when he voluntarily arrived to work early he socialized, put his

belongings away, or used the bathroom.  (*Id.* at 9.)  Defendants point to Plaintiff's time records

to argue that he regularly clocked in less than seven minutes before his start time.  (*Id.* at 10.)

Further, Defendants cite to their non-party declarations arguing that debt collectors were

afforded their full one-hour lunch breaks.  (*Id.* at 6-7.)

       The Court finds that Plaintiff has attested to facts sufficient to show he was subject to an

unlawful overtime policy in possible violation of the FLSA.[7]  Plaintiff was required, or at least

*expected*, to clock in seven minutes or less ahead of his scheduled shift start time so that he was

ready to begin making and fielding calls at his scheduled start time.  (DE 1 ¶¶ 53-56.)

Defendants posted a sign next to the time clock regarding the seven-minute "requirement" and

Russell, Sapp and White all testified that debt collectors were expected to be logged on and into

the three systems in order to start their calls at their scheduled start times.  (DE 1 ¶ 57 DE 59 ¶ 9;

DE 57, Ex. F at 44; DE 57, Ex. E. at 23-24; DE 57, Ex. G at 36-40.)  Plaintiff's Declaration

states that when he was not ready to take calls at the start of his shift, Sapp told him to correct his

behavior and to be ready to take calls before the start of his shift.  (DE 59 ¶ 29.)  Further,

Defendants implemented a rounding policy whereby employees' hours were rounded to the

nearest fifteen-minute increment, so if for example, Plaintiff clocked in at 11:53 AM, he was

only credited with working from 12:00 PM.  (DE 1 ¶¶ 58, 63-64; *see also id.* at Ex. A (Plaintiff's

time sheets and paystubs).)  Plaintiff asserts that Defendants intentionally never compensated

Plaintiff or other debt collectors for the extra seven minutes of work they did per shift, as they

were deprived of the time they actually worked by only receiving credit for working to the

nearest quarter of an hour.  (DE 1 ¶¶ 58, 61.)

---

[7] The Court also notes that as the Honorable Gary R. Brown held in denying Defendants' summary
judgment motion, "the record after [2017] is sufficiently ambiguous that I cannot say that a rational jury
couldn't find that there - - may have been violations of the statute here."  (DE 53 at 35.)

Plaintiff's Declaration notes that RUI employs about 180 other debt collectors who also worked a similar purported forty-hour work schedule, and who complained to Plaintiff about RUI's unlawful pay practices, including the insistence that they come in seven minutes or less before their shifts to perform work related job duties that they were not compensated for. (DE 59 ¶¶ 34-36.)  Plaintiff further specifically identifies two other debt collectors by name (Benjamin Luciano and Joanne Doe) who worked similar, if not identical, shifts as Plaintiff and who were requested to arrive at work seven minutes or less before their official start time to "set up," without being compensated for that time. (*Id.* ¶ 38-43.)  Plaintiff states that he spoke with Doe on a cigarette break and Luciano during lunch. (*Id.* ¶ 44.)

Here, Plaintiff provides adequate detail for the Court to conclude that he is similarly situated to other potential members of a collective consisting of debt collectors.  Based on the information asserted, the Court "may infer that other [debt collectors] worked similar shifts for comparable pay, thereby suffering the same violations of the FLSA." *Genxiang Zhang v. Hiro Sushi at Ollie's Inc.*, 17cv7066 (DF), 2019 WL 699179, at *8 (S.D.N.Y. Feb. 5, 2019); *see also Sobczak v. AWL Indus., Inc.*, 540 F. Supp. 2d 354, 363-64 (E.D.N.Y. 2007) ("In the present posture of the case, [it is not the Court's function to decide], that the potential class members are, in fact, similarly situated or whether the practices or policies complained of, in fact, do exist.").  The Court in *Genxiang Zhang*, highlighted the fact that Plaintiff, a delivery worker, described conversations he had with several other current and former delivery workers, that he specifically identified several of the employees, and that based on those conversations it was Plaintiff's understanding that those employees were paid at the same rate as him.  2019 WL 699179, at *9.  Noting that "[c]ourts generally find affidavits from named plaintiffs, attesting to their personal knowledge that coworkers were subject to similar employment practices as they were, to be

15

sufficient to certify collective actions[,]" the Court held that Genxiang Zhang's assertions further

bolstered the determination that it was appropriate to certify a collective of delivery workers. *Id.*

Moreover, "[c]ourts do not require a named plaintiff to show an actual FLSA violation,

but rather that a 'factual nexus' exists between the plaintiff's situation and the situation of other

potential plaintiffs." *Sobczak*, 540 F. Supp. 2d 354, 362 (citation omitted) (finding that

plaintiffs' affidavits stating they had conversations with other employees, whom they identified

by name, regarding defendants' policy of misclassifying workers, and that the employees

compared their paychecks, sufficiently demonstrated a factual nexus between named plaintiffs

and other potential class members); *see also Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d

474, 482 (S.D.N.Y. 2016) (holding that plaintiff provided sufficient factual detail for the court to

preliminarily conclude she was similarly situated to other nail technicians/massage therapists

because plaintiff provided names of other nail technicians/massage therapists who she asserted

were subject to similar wage/hour violations; noted the time and circumstances of her

conversations; stated her own observations that the employees worked similar hours and earned

similar wages; and, provided pay records).  Accordingly, the Court finds that Plaintiff has

sufficiently shown that the other debt collectors at RUI were subject to the same alleged FLSA

violations as Plaintiff.[8]

---

[8] Plaintiff seeks conditional collective certification for both unpaid overtime compensation and unpaid
minimum wages, and although his motion papers are scant as to the minimum wage claims (and not
directly addressed by Defendants), the Court finds that such claims are essentially supported by Plaintiff's
assertions as discussed above.  *Shillingford v. Astra Home Care, Inc.*, 293 F. Supp. 3d 401, 412 (S.D.N.Y.
2018) is instructive.  There, Plaintiff's submissions in support of her motion made no more than a passing
reference to minimum wage claims and focused instead on overtime claims.  *Id.*  Plaintiff's paystub
showed that her hourly compensation was well above federal minimum wage, but the Court reasoned that
if Plaintiff's arguments were true about lack of meal breaks/uninterrupted hours of sleep, then her average
pay would not amount to minimum wage.  *Id.*  The Court, expressing skepticism about the strength of the
record, thus found that Plaintiff had "just cleared the hurdle of showing that she and other aides who
worked live-in shifts were victims of a common policy that violated the minimum wage provision of the
FLSA." *Id.*  Here, Plaintiff's pay records show that he was earning $16, above the federal minimum
wage, but similar to *Shillingford*, Plaintiff's average pay may not amount to minimum wage considering

Defendants' declarations by Purvis, Lopez, Perez, and Falcon, do not alter the Court's conclusion. *See Raniere v. Citigroup Inc.*, 827 F. Supp. 2d 294, 323 (S.D.N.Y. 2011), *rev'd on other grounds*, 533 F. App'x 11 (2d Cir. 2013) ("A person-by-person fact-intensive inquiry is premature at the conditional certification stage and has been specifically rejected by courts within this Circuit.") (collecting cases); *see also Shanfa Li v. Chinatown Take-Out Inc.*, 16 Civ. 7787 (JCM), 2018 WL 1027161, at *2 (S.D.N.Y. Feb. 21, 2018) (citation omitted) (holding that, at [the conditional certification stage], the Court does not weigh the merits of the underlying claims, resolve factual disputes, or evaluate credibly); *Brown v. Barnes and Noble, Inc.*, 1:16-cv-07333 (RA) (KHP), 2018 WL 3105068, at *7 (S.D.N.Y. June 25, 2018) ("Importantly, even under this [modest plus] standard, the Court may not resolve factual disputes, decide ultimate issues on the merits, or make credibility determinations." (internal quotation marks and citation omitted)). Further, Defendants' affidavits are not properly considered at this stage of litigation because the affiants have not been made available for depositions. *See Amador v. Morgan Stanley & Co., LLC*, 2013 U.S. Dist. LEXIS 19103, at *28 (S.D.N.Y. Feb. 7, 2013) (collecting cases); *Korenblum*, 195 F. Supp. 3d 475, 482 (even using a "modest plus" standard, "the Court draws no negative inferences of any sort where evidence is lacking because Plaintiffs may not have received discovery on the issue.") (citations omitted)).

### B. Notice Period

Plaintiff argues that if the Court concludes that the three-year statute of limitations should be applied to notice to the collective, then the Court should toll this statutory period from three

---

the assertions that debt collectors were working longer than their scheduled shifts, subject to the same rounding policy, and were only afforded overtime if it was approved. (DE 56 at 13-14 (citing Reiter's testimony at DE 57, Ex. D at 28-35, 43-46, 52-56, 167-68, 218-21 and Sapp's testimony at DE 57, Ex. F at 33-34)).

17

years from the date Plaintiff filed this action, August 13, 2017.[9]  (DE 56 at 17-18.)  Plaintiff

reasons that he initially tried to move for conditional certification in July of 2020, but that the

Honorable Sandra J. Feuerstein did not permit Plaintiff to make the motion until discovery was

completed with respect to Plaintiff, and so the tolling should count from that initial application

rather than the date the subject motion was actually filed.  (*Id.*)  Plaintiff, therefore, asserts that

the potential opt-in plaintiffs' claims should be tolled for the period the court took to decide the

conditional certification motion.  (*Id.* at 18.)  Defendants argue that Plaintiff has not identified

rare or exceptional circumstances to support equitable tolling.  (DE 61 at 18.)  Defendants further

argue that because no individuals have filed a written consent to join the action, the Court cannot

determine whether equitable tolling applies.  (*Id.* at 19.)

        In order to avoid sending notice to individuals whose claims will be time-barred, the

notice period is generally governed by the applicable statute of limitations for the alleged

violations.  *Diaz*, 2022 WL 801493, at *6 (citation omitted).  Under the FLSA, the statute of

limitations is ordinarily two years, unless the claim arises from a willful violation in which case,

the statute is extended to three years.  *Id.*; *see also* 29 U.S.C. § 255(a).  "At the conditional

certification stage, allegations of willful conduct are sufficient to apply the three-year statute of

limitations for purposes of certifying the class."  *Id.* (quoting *Jie Zhang v. Wen Mei, Inc.*, No.

CV14-1647 (JS)(SIL), 2015 WL 6442545, at *5 (E.D.N.Y. Oct. 23, 2015)).  Here, it is

appropriate to apply the three-year statute of limitations under the FLSA as the Complaint

---

[9] Plaintiff does not set forth any argument regarding the six-year statute of limitations for New York Labor Law claims.  *See* N.Y. Lab. L. § 198(3).

It is unclear whether Plaintiff is seeking equitable tolling dating back three years from the date this action was filed or three years from the date he originally served his motion for conditional certification. Three years from the date Plaintiff filed this action would be April 13, 2017, not August 13, 2017.  As discussed below, Plaintiff then argues that the tolling should date back three years from when he first moved for conditional certification.

alleges willful conduct by Defendants. *See Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 74 (E.D.N.Y. 2016) (holding that at the conditional certification stage of the FLSA proceedings, a three-year statute of limitations applied because the complaint alleged willful conduct by defendants).

In FLSA collective action cases, "the limitations period continues to run for each plaintiff until he or she files written consent with the court to join the lawsuit." *Viriri v. White Plains Hosp. Med. Ctr.*, 320 F.R.D. 344, 355 (S.D.N.Y. June 8, 2017) (citation omitted). However, "[a] district court may toll the statute of limitations period to avoid inequitable circumstances . . . ." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 170 (S.D.N.Y. 2014) (citation omitted). To determine whether application of such tolling is justified, a district court looks to whether the party requesting the application (1) has acted with reasonable diligence during the time period they seek to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply. *Zerilli-Edelglass v. N.Y.C. Trans. Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003) (citing *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002)). "The Second Circuit has cautioned that equitable tolling is considered a drastic remedy applicable only in rare and exceptional circumstance[s] . . . ." *Katz v. Equinox Holdings, Inc.*, 20-CV-9856, 2022 WL 2952143, at *2 (S.D.N.Y. July 26, 2022) (alteration in original) (internal quotation marks omitted) (citing *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 144 (2d Cir. 2011)).

As noted by Plaintiff, he initially served a motion for conditional certification upon Defendants on July 15, 2020. (DE 57, Ex. H.) On July 23, 2020, Judge Feuerstein stayed motions for conditional certification and class certification pending a determination of any motion for summary judgment on the merits of Plaintiff's individual claims or further order of

the Court.  (DE 26.)   Discovery pertaining to Plaintiff was completed and Defendants' motion

for summary judgment was fully briefed, and subsequently denied on September 20, 2021.  (DE

44; DE 51.)  Thereafter, on October 12, 2021, the Honorable A. Kathleen Tomlinson directed

Plaintiff to proceed, if still desired, with the anticipated motion for conditional certification.

(Electronic Order dated Oct. 12, 2021.)  Plaintiff then proceeded to file the subject motion on

October 20, 2021.  (DE 55.)  In total, approximately twenty-five months elapsed since Plaintiff

served his initial motion for conditional certification.

      As to whether equitable tolling should apply, under the circumstances presented here, the

Court agrees that Plaintiff has satisfied the second prong of the equitable tolling analysis,

showing extraordinary circumstances resulting from the litigation delays.  *See McDermott v.*

*Fed. Sav. Bank*, CV 14-6657 (JMA)(GRB), 2018 WL 6718599, at \*4 (E.D.N.Y. Sept. 28, 2018),

*report and recommendation adopted by* 2019 WL 1305992 (E.D.N.Y. Mar. 22, 2019) (finding

that where thirty months elapsed from the filing of the motion for collective certification to when

the motion was granted constituted "an extraordinary circumstance that could satisfy the second

prong of the equitable tolling standard."); *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d

438, 445 (S.D.N.Y. 2012) (finding that plaintiff cannot sit on the right to pursue a claim

indefinitely, but "those whose putative class representatives and their counsel are diligently and

timely pursuing the claims should also not be penalized due to the courts' heavy dockets and

understandable delays in rulings."); *Yahraes v. Rest. Assocs. Events Corp.*, No. 10-CV-935

(SLT), 2011 WL 844963, at \*3 (E.D.N.Y. Mar. 8, 2011) (finding that equitable tolling was

warranted in the interest of fairness, from the date plaintiffs served their original certification

motion, through the date another judge issued a stay, through the date plaintiff re-filed the

certification motion, and up to the date the court granted the motion).

However, the diligence prong is a sticking point for Plaintiff at this juncture, as there appears to be a divide in this Circuit regarding exactly *whose* diligence should be considered – the named plaintiff or the potential opt-in plaintiffs. *See McDermott*, 2018 WL 6718599, at *4-5 (contrasting "well-reasoned opinions [that] have equitably tolled the statutes of limitations based upon the diligence demonstrated by named plaintiffs and their counsel" with "cases that, drawing largely on *dicta* from the Supreme Court and the Second Circuit, hold that diligence should be measured against the actions of the potential opt-in plaintiffs.").  A recent Southern District decision issued in July of 2022, *Katz*, 2022 WL 2952143, is particularly instructive, as the Court squarely addressed this discrepancy.  The Court referred to Plaintiff's request for equitable tolling as "blanket equitable tolling," which "would apply to all potential opt-in plaintiffs without the necessity of conducting a case-by-case assessment of each plaintiff's entitlement to equitable tolling."  *Id.* at *3 n.3.  The Court held that to grant equitable tolling, a plaintiff is required to give specific details regarding the potential opt-in plaintiffs who wish to join the collective, but who are or may become time-barred.  *Id.* at *3 (citations omitted).  District Judge Caproni's reasoning in *Katz* is sound and adopted by this Court.  Here, similar to *Katz*, Plaintiff misplaces his focus on his own diligence in pursuing the conditional certification motion.  Indeed, the Court cannot assess whether any potential opt-in plaintiff diligently pursued their rights because Plaintiff has not provided "any information as to potential opt-in plaintiffs, how they exercised reasonable diligence, and how they were prevented from exercising their rights."  *Id.*  (citing *Alvarado Balderramo v. Taxi Tours Inc.*, No. 15-CV-2181, 2017 WL 2533508, at *5 (S.D.N.Y. June 9, 2017) (equitable tolling is "a highly factual issue that depends on what and when a plaintiff knew or should have known – an inquiry that is simply impossible to conduct when opt-in plaintiffs and the facts specific to them have not yet been revealed.")).  Accordingly,

Plaintiff's request for equitable tolling is denied without prejudice to potential opt-in plaintiffs seeking equitable tolling on a case-by-case basis.[10]

## C.  Notice

After "a court determines that a named plaintiff has demonstrated that he or she is similarly situated to other employees of the defendant with respect to the defendant's alleged unlawful policy[,]" the court may authorize issuance of a notice to inform potential plaintiffs that they may opt into the lawsuit.  *Wang*, 2022 WL 79155, at *10 (citing *Genxiang Zhang*, 2019 WL 699179, at *6).  The district court has broad discretion in authorizing what form such notices should take.  *Id.*

Here, Plaintiff attaches a proposed Notice to which Defendant submits multiple objections.  (DE 57 at Ex. I; DE 61 at 20.)  Nonetheless, Plaintiff has consented to Defendants' suggestion that the parties be given a reasonable amount of time to meet and confer regarding the content of the proposed notice, and that if they have any disputes, they may seek the Court's intervention.  (DE 61 at 20; DE 64 at 10.)  Accordingly, the parties shall meet and confer regarding a proposed notice for the potential opt-in plaintiffs, including the method for disseminating the notice.  If the parties cannot reach an agreement, they shall advise the Court on or before September 30, 2022.

---

[10] While there have been instances that Courts find motions regarding equitable tolling to be dispositive, the Court does not find this to be such an instance.  *See Chen-Oster v. Goldman, Sachs & Co.*, 10-cv-6950 (AT) (RWL), 2021 WL 5106528, at *3 (S.D.N.Y. Nov. 3, 2021) (comparing a court's decision as to whether any named or absent class member's claims are barred by the statute of limitations, which is dispositive, with a court's decision as to whether the statute of limitations should be tolled prospectively for a period of time for those class members who have been compelled to arbitrate even though they have long been class members and that have not yet received formal notice that they have been excluded from ruling a claim, which is non-dispositive); *Cf. McDermott*, 2018 WL 6718599, at * 1, 1 n.1 (finding that decision as to whether equitable tolling applied was dispositive where procedural posture was such that notice had already been provided to the movants – the potential opt-in plaintiffs – more than three years after the termination of their employment with defendants, and thus the three-year FLSA statute of limitations was already established as expired).

**D.  Discovery of Names, Addresses, Telephone Numbers, and Email Accounts**

Plaintiff requests that Defendants be ordered to provide the names and contact

information of potential collective members.  (DE 56 at 18.)  Specifically, Plaintiff seeks:

> a computer-readable list of all non-managerial Debt Collectors who were employed
> at RUI owned by Reiter at any point in the three years prior to the filing of this
> lawsuit, along with the following information: name, last known mailing address,
> alternate address (if any), all known telephone numbers, all work e-mail accounts
> of active employees, non-work-related e-mail accounts of all potential members
> and dates of employment at RUI.

 (*Id.* at 19.)  Although Defendants request the Court to deny Plaintiff's motion "in its entirety,"

(DE 61 at 21), they do not explicitly oppose Plaintiff's request for the contact information of

potential opt-in plaintiffs.

Courts regularly grant requests for "names, last known addresses, telephone numbers

(both home and mobile), e-mail addresses, and dates of employment, . . . in connection with a

conditional certification of an FLSA collective action."  *Puglisi v. TD Bank, N.A.*, 998 F. Supp.

2d 95, 102 (E.D.N.Y. 2014) (internal quotation marks and citations omitted).  Accordingly,

Plaintiff's request for the aforementioned contact information of potential collective members is

hereby granted and Defendants shall provide the information, in computer-readable format,

within 21 days of this Order.

## V.      CONCLUSION

For the reasons stated above, (1) Plaintiff's motion for conditional certification of the

FLSA claim as a representative collective action pursuant to 29 U.S.C. § 216(b) is granted; (2)

Plaintiff's request for the statute of limitations to be equitably tolled from the date that Plaintiff

filed this action is denied without prejudice to potential opt-in plaintiffs seeking equitable tolling

on a case-by-case basis; (3) Plaintiff's request for the contact information of potential collective

members is granted; and, (4) the parties are hereby directed to meet and confer regarding the

contents and dissemination of the notice and advise the Court on or before September 30, 2022,

if they cannot reach an agreement as to the parameters of the notice.

Dated:  Central Islip, New York
        August 30, 2022

**S O   O R D E R E D:**

/S/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge
